# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

Melissa S. Landon,
Edward P. Landon,
Shane Auxier, and
Mu Hpare,
On behalf of themselves and
all others similarly situated,

     Plaintiffs,

vs.

Bluegreen Vacations Unlimited, Inc.
and Bluegreen Vacations Corporation,

     Defendants.

**COMPLAINT - CLASS ACTION**

Case No.: 18-CV-994

**Jury Trial Demanded**

---

### Class Action Complaint For Damages,
### Declaratory and Injunctive Relief

---

## I. INTRODUCTION

l.     Plaintiffs Melissa S. Landon, Edward P. Landon, Shane Auxier, and Mu

Hpare, by their attorneys, bring this Class Action Complaint for damages, injunctive and

declaratory relief, specific performance, rescission, and any other available legal or

equitable remedies, against Defendants Bluegreen Vacations Unlimited, Inc. and

Bluegreen Vacations Corporation for their illegal, deceptive and misleading business and

sales practices, including violations of Wis. Stat. § 707.55 of the Wisconsin Timeshare

Act and Wisconsin's laws prohibiting illegal referral selling as provided by the Wisconsin

Administrative Code Chapter ATCP 121 and Wis. Stat. § 100.20(5).

2.　　These provisions are intended to provide minimum disclosures to persons purchasing timeshare interests in Wisconsin, to afford cancellation rights to such persons, and to prohibit various contract provisions and practices deemed oppressive by the Wisconsin legislature.

3.　　Unless otherwise indicated, the use of Defendants' names in this Complaint includes all of their agents, employees, officers, directors, principals, trustees, representatives and insurers.

## II.  JURISDICTION AND VENUE

4.　　Jurisdiction of this court arises under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  Supplementary jurisdiction is proper under 28 U.S.C. § 1367.

5.　　As set forth below, each Plaintiff is a resident and citizen of Wisconsin or Iowa.  Defendants are Florida corporations with their principal places of business in Florida.  The amount in controversy exceeds $5 million, exclusive of interests and costs. There are more than 100 class members.

6.　　Venue is proper in the United States District Court for the Eastern District of Wisconsin (Milwaukee) pursuant to 28 U.S.C. § 1391(c), because:

　　　　a.　　Defendants' contacts with this District are sufficient to subject them to personal jurisdiction; and

2

b. Events, including solicitations to attend timeshare presentations which gave rise to the claims alleged, occurred in this district.

## III. PARTIES

7. Plaintiff Melissa S. Landon is a natural person and citizen of the State of Wisconsin residing in Slinger, WI.

8. Plaintiff Edward P. Landon is a natural person and citizen of the State of Wisconsin residing in Slinger, WI.

9. Plaintiff Shane M. Auxier is a natural person and citizen of the State of Iowa residing in Boone, IA.

10. Plaintiff Mu Hpare is a natural person and citizen of the State of Iowa residing in Boone, IA.

11. Defendant Bluegreen Vacations Corporation is a Florida corporation engaged in, *inter alia*, the marketing, sale, management and operation of timeshare interests, real property, and vacation ownership interests throughout the United States, including Wisconsin.

12. Bluegreen Vacations Corporation's principal business address is 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.

13. Defendant Bluegreen Vacations Unlimited, Inc. is a Florida corporation engaged in, *inter alia*, the marketing, sale, management and operation of timeshare interests, real property, and vacation ownership interests throughout the United States,

3

including Wisconsin.

14.     Bluegreen Vacations Unlimited, Inc.'s principal business address is 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431. Its registered agent and office in Wisconsin is Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, WI 53717.

15.     Prior to April 2013, Bluegreen Vacations Corporation, then known as Bluegreen Corporation, was a publicly traded corporation.

16.     According to Bluegreen Vacations Corporation's 2017 Form 10-K filing, on September 25, 2017, Bluegreen Corporation changed its name to Bluegreen Vacations Corporation.

17.     According to a Federal Rule of Civil Procedure Rule 7.1 Disclosure Statement filed on April 8, 2016 by Bluegreen Vacations Unlimited Inc. in *Anderson et al. v. Dellona Enterprises, Inc., et al.*, U.S. District Court, Western District of Wisconsin, Case No. 16-CV-222, Bluegreen Corporation (now Bluegreen Vacations Corporation) is a wholly owned subsidiary of Woodbridge Holdings LLC.

18.     According to a Federal Rule of Civil Procedure Rule 7.1 Disclosure Statement filed by Bluegreen Corporation and Bluegreen Vacations Unlimited in *Anderson et al. v. Dellona Enterprises, Inc., et al.*, U.S. District Court, Western District of Wisconsin, Case No. 16-CV-222, BFC Financial Corporation and BBX Capital Corporation own approximately 54% and 46%, respectively, of Woodbridge Holdings

4

LLC.

19. Per Bluegreen Vacations Corporation's Form 10-K filing for the fiscal year ending December 31, 2017, Bluegreen Vacations Corporation had total assets of $1,236,424,000.00.

20. According to a Federal Rule of Civil Procedure Rule 7.1 Disclosure Statement filed on April 8, 2016 by Bluegreen Vacations Unlimited, Inc. in *Anderson et al. v. Dellona Enterprises, Inc., et al.*, U.S. District Court, Western District of Wisconsin, Case No. 16-CV-222, Bluegreen Vacations Unlimited, Inc. is a wholly owned subsidiary of Bluegreen Corporation (now Bluegreen Vacations Corporation).

21. Bluegreen Vacations Corporation is a "developer" as that term is defined by Wis. Stat. § 707.02(11).

22. Bluegreen Vacations Corporation offers to sell and sells "time shares" as that term is defined by Wis. Stat. § 707.02(24).

23. Bluegreen Vacations Corporation offers to sell and sells time share interests and/or real property from its resorts at Christmas Mountain Village and, upon information and belief, from Bluegreen Odyssey Dells, both located in Wisconsin Dells, Wisconsin. According to Defendants' SEC filings, Christmas Mountain Village has 381 units and Bluegreen Odyssey Dells has 92 units.

24. Bluegreen Vacations Unlimited is a "developer" as that term is defined by Wis. Stat. § 707.02(11).

5

25.     Bluegreen Vacations Unlimited offers to sell and sells "time shares" as that term is defined by Wis. Stat. § 707.02(24).

26.     Future references to "Bluegreen" in this complaint will refer collectively to Bluegreen Vacations Corporation and Bluegreen Vacation Resorts, Inc.

## IV.  FACTUAL ALLEGATIONS

### A.  Bluegreen Business Model

27.     Bluegreen is a leader in the vacation ownership industry and sells timeshare contracts to consumers through "front-line" and "in-house" sales.

28.     Front-line sales consists of selling "timeshare points" to individuals who do not already own Bluegreen "timeshare points.

29.     In-house sales consists of selling "timeshare points" to individuals who already own Bluegreen "timeshare points."

30.     Although Bluegreen's front-line sales and in-house sales offer to sell what it refers to as "timeshare points," what Bluegreen actually sells is interests in real property.

31.     Bluegreen sells real property that it or one of its subsidiaries owns, as well as real property owned by third parties.

32.     From 2010 to the present, at its resort at Christmas Mountain Village in Wisconsin Dells, Wisconsin, Bluegreen offered to sell and sold real property located in Wisconsin and other states.

33.     Some of the real property Bluegreen offered to sell from 2010 to the present

6

was developed and owned by Bluegreen or one of its subsidiaries.

34.     The real property Bluegreen offered to sell and sold from 2010 to the present that was developed and owned by Bluegreen or one of its subsidiaries is referred to by Bluegreen as "Club Resorts."

35.     Some of the real property Bluegreen offered to sell from 2010 to the present was developed and owned by third-party companies, hereinafter referred to as "Third-Party Developers."

36.     The real property Bluegreen offered to sell and sold from 2010 to the present that was developed and owned by Third-Party Developers is referred to by Bluegreen as "Club Associate Resorts."

37.     Bluegreen's primary method of selling the real property it offers to sell and sells from Christmas Mountain Village is through sales presentations.

38.     Bluegreen sales presentations are face-to-face meetings between Bluegreen sales representatives and prospective purchasers ("guests"), and face-to-face meetings between Bluegreen sales representatives and current owners ("owners") of Bluegreen "timeshare points."

39.     The goal of Bluegreen sales presentations, or "tours" as Bluegreen sometimes refers to them, is to sell Bluegreen "timeshare points."

40.     Bluegreen solicits and requests payments from guests and owners at sales

7

presentations.

41.     Bluegreen sales representatives who offer to sell and sell "timeshare points" to individuals who do not—at the time of the sales presentation—already own Bluegreen "timeshare points," *i.e.* guests, are referred to by Bluegreen as "Front-line Sales Representatives."

42.     Bluegreen sales representatives who offer to sell and sell "timeshare points" to individuals who own Bluegreen "timeshare points" at the time of the sales presentation, *i.e.*, owners, are referred to by Bluegreen as "In-house Sales Representatives."

43.     Bluegreen sales representatives are trained to used standardized selling pitches and procedures.

44.     Even though Bluegreen was actually offering to sell interests in real property, Bluegreen's sales employees told guests and owners that what they were offering to sell and selling were "timeshare points."

45.     According to Bluegreen, "timeshare points" represent an owner's beneficial ownership and use rights in the real property Bluegreen actually sells guests and owners.

46.     According to Bluegreen, "timeshare points" can be used by owners to stay at Club Resorts and Club Associate Resorts.

47.     The Front-line Sales Representatives meet with the guest and introduce the guest to the concept of "timeshare points."

48.     The In-house Sales Representatives meet with owners and try and sell them

8

additional "timeshare points."

49.     When a Bluegreen sales representative offers to sell "timeshare points" to a guest or owner, the sales representatives do not know where the real property they are selling is located.

50.     When Bluegreen sales representatives offer to sell "timeshare points" to a guest or owner, the sales representatives also do not know who the owner of the real property they are offering to sell is.

51.     At the time Bluegreen sales representatives offer to sell "timeshare points" to a guest or owner, the owner of the real property could be Bluegreen or one of its subsidiaries or one of many different Third-Party Developers with whom Bluegreen has business relationships.

52.     In fact, at the time of the sales presentation, Bluegreen sales representatives can never tell a guest or owner where the real property that Bluegreen is actually offering to sell the guest or owner is located because neither the sales representatives nor Bluegreen knows where the real property they are selling is located at that point in time.

53.     Bluegreen does not determine where the real property it is actually selling is located—or the identity of the seller of the real property—until after the guest or owner agrees to purchase a certain number of "timeshare points," after the guest or owner makes a down payment, and after the guest or owner signs a document referred to as a "Purchase Proposal," which only makes reference to the number of "timeshare points" being sold.

9

54.     The failure of Bluegreen and its employees to disclose the identity of the seller of the real property Bluegreen is offering to sell at the beginning of Bluegreen's initial contact with the guest or owner is a violation of Wis. Stat. § 707.55(8).

55.     Wis. Stat. § 707.55(8) provides:

In connection with the offer or sale of a time share, no person may engage in any of the following practices:

(8) SELLER'S IDENTITY. Failing to clearly disclose the seller's identity and that time shares are being offered for sale at the beginning of an initial contact with a prospective purchaser, if the contact is initiated by or on behalf of a seller.

56.     Bluegreen violates Wis. Stat. § 707.55(8) using the sales process it uses at Christmas Mountain Village, *i.e.*, determining the location of the real property it is selling, as well as the identity of the seller of the real property, only after the guest or owner agrees to purchase "timeshare points," and only after the guest or owner receives a "Purchase Proposal."

57.     The Purchase Proposal does not indicate that what Bluegreen is actually selling the guest or owner is real property.

58.     The Purchase Proposal states the following: "The seller is Bluegreen Vacations Unlimited, Inc."

59.     The statement that "The seller is Bluegreen Vacations Unlimited, Inc." is a material misrepresentation and a violation of Wis. Stat. § 707.55(1) in instances where Bluegreen is actually selling real property owned by a Third-Party Developer.

60.     The statement that "The seller is Bluegreen Vacations Unlimited, Inc." is a

10

material misrepresentation and a violation of Wis. Stat. § 707.55(1) in instances where Bluegreen is actually selling real property located at a Club Associate Resort.

61.     After the guest or owner makes the down payment on the "timeshare points," a "Quality Assurance Specialist" (QAS) prepares the contract documents associated with the sales transaction.

62.     The QAS inputs the information form the Purchase Proposal into a computer software program called SPI, and processes the guest's or owner's down payment.

63.     The SPI software program then determines, based on the number of "timeshare points" Bluegreen is selling the guest or owner—as well as the inventory of real property available at Club Resorts and Club Associate Resorts—where the real property Bluegreen is actually selling to the guest or owner is located and the identity of the seller of the real property.

64.     If the real property is located at a Club Resort, the seller is Bluegreen or one of its subsidiaries.

65.     If the real property is located at a Club Associate Resort, the seller is a Third-Party Developer.

66.     Bluegreen sells real property owned by, and on behalf of, more than a dozen Third-Party Developers.

11

67. These sales practices tend to induce consumers into entering into improvident contracts.

### B. Buyers' Cancellation Rights

68. When Bluegreen sells timeshares to buyers from their sales offices in Wisconsin where the actual timeshare interests sold are located outside of Wisconsin, the contract documents have a choice of law provision stating that Florida law applies, except that the Wisconsin Timeshare Act applies to the buyer's cancellation rights, as well as the escrow payments of the purchaser before closing.

69. Bluegreen contracts refer in two places to the applicability of the Wisconsin Timeshare Act to a buyer's cancellation rights if the contract is signed in Wisconsin. In the first reference, the choice of law provision provides in the "Terms and Conditions" of the contract under "GOVERNING LAW":

> This agreement shall be construed in accordance with the laws of the State of Florida; excepting, however, that the provisions relating to the Purchaser's right to cancel this Agreement and the escrow of Purchaser deposit payments made prior to closing, which provisions shall be construed, interpreted, and enforced in accordance with the laws of the state where Purchaser executes this Agreement.

70. Plaintiffs and each of the Class Members signed timeshare contracts in Wisconsin.

71. The second place in the timeshare contracts which provides that the Wisconsin Timeshare statute applies to the Class Members' cancellation rights is on the last page of the contract, which states (emphasis in original):

**IF YOU EXECUTE THIS AGREEMENT IN WISCONSIN, YOUR**

**CANCELLATION RIGHTS ARE SUBJECT TO AND PROTECTED BY WISCONSIN LAW. THE REFERENCES TO THE TEN (10) DAY CANCELLATION PERIOD PURSUANT TO FLORIDA STATUTES, CHAPTER 721, CONTAINED IN THE TEXT OF THE PUBLIC OFFERING STATEMENT ARE NOT APPLICABLE TO YOU, AS THEY ONLY APPLY TO CONTRACTS EXECUTED IN THE STATE OF FLORIDA. WISCONSIN LAW PROVIDES YOU WITH THE FOLLOWING CANCELLATION RIGHTS:**

**YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR OBLIGATION WITHIN 5 BUSINESS DAYS FROM THE DATE YOU SIGN THIS CONTRACT OR UNTIL 5 BUSINESS DAYS LATER. IF YOU DECIDE TO CANCEL, YOU MUST NOTIFY THE DEVELOPER, IN WRITING, OF YOUR INTENT TO CANCEL. YOUR NOTICE OF CANCELLATION SHALL BE EFFECTIVE UPON THE DATE SENT AND SHALL BE SENT TO: BLUEGREEN VACATIONS UNLIMITED, INC., ATTN: CORPORATE SALES ACCOUNTING DEPARTMENT., 4960 CONFERENCE WAY N STE 100, BOCA RATON FL 33431-3311. ANY ATTEMPT TO OBTAIN A WAIVER OF YOUR CANCELLATION RIGHTS IS UNLAWFUL. WHILE YOU MAY EXECUTE ALL CLOSING DOCUMENTS IN ADVANCE, THE CLOSING, AS EVIDENCED BY DELIVERY OF THE DEED OR OTHER DOCUMENT TO THE TRUSTEE, BEFORE EXPIRATION OF YOUR 5 BUSINESS DAY CANCELLATION PERIOD, IS PROHIBITED.**

**In addition, if the Purchaser has used or occupied any Bluegreen Vacation Club Component Site resort for more than 12 hours prior to delivering a notice of cancellation, the funds to be returned to the Purchaser may be reduced by a reasonable charge to cover the length of stay, plus the cost for damages, if any, to the resort directly attributable to the Purchaser's use or occupancy.**

72.     The Wisconsin Timeshare Act's relevant statutory sections of Wisconsin's timeshare cancellation law are comprised of three statutes: Wis. Stats. §§ 707.47, 707.46, and 707.41.

73.    Wis. Stat. § 707.47 provides:

**707.47  Purchaser's right to cancel.**

(1)  Provision of statement. A person required to deliver a time-share disclosure statement under s. 707.41(2) shall, before transfer of a time share and no later than the date of any contract for the purchase of a time share, provide a prospective purchaser with a copy of the time-share disclosure statement and all amendments and supplements to the statement.

(2) Right to cancel. If delivery of a time-share disclosure statement is required under s. 707.41(2), the purchaser may cancel a contract for the purchase of a time share until midnight of the 5th business day after whichever of the following is later:

> (a) The date that the contract is executed.

> (b) The date on which the purchaser receives the last of the documents required to be provided to the purchaser under sub. (1).

(3) Activity before cancellation period expires. No title may be recorded, deed delivered or deposit released until the cancellation period under sub. (2) has expired. Nothing in this subsection or sub. (4) precludes the execution of documents before the cancellation period expires, for delivery after the cancellation period expires.

(4) Waiver prohibited. The purchaser or any person on behalf of the purchaser may not waive the right to cancel under sub. (2).

(5) Notice of cancellation. If a purchaser elects to cancel a contract under sub. (2), the purchaser may do so by personally-delivering notice of the cancellation to the seller or by mailing the notice to the developer or to the developer's agent for service of process. If mailed, any notice of cancellation shall be considered given on the date that the notice is postmarked.

(6) Refund.

> (a) Cancellation under sub. (2) shall be without penalty, and, except as provided in par. (b), all payments made by the purchaser before cancellation shall be refunded within 20 days after receipt of the notice of cancellation or within 5 days after receipt of funds from the purchaser's cleared check, whichever is later.

14

(b) If the purchaser has used or occupied the time-share property for more than 12 hours before cancellation, the funds to be returned to the purchaser may be reduced by a reasonable charge to cover the length of stay plus the cost for damages, if any, to the time-share property directly attributable to the purchaser's use or occupancy of the time share property.

74.     Part of the cancellation rights of a buyer who signs a timeshare contract is also found in Wis. Stat. § 707.46, which provides, in pertinent part:

**707.46  Contract; minimum requirements**.

(1)  Required provisions. All contracts for the purchase of a time share shall contain at least all of the following provisions:

(a) The actual date that the contract is executed by each party.

(b) The name and address of the developer or seller and of any agent acting on behalf of the developer or seller, and, if different than the developer or seller, any owner of the land or buildings included in the project of which the time shares are a part.

(c) The total financial obligation of the purchaser, including the initial purchase price and any additional charges to which the purchaser may be subject, such as financing, reservation and recreation charges and time-share expenses.

(d) The projected date of completion of construction, as defined in s. 707.49 (1) (a), of each part of the project of which time shares are a part which is not completed at the time the purchase contract is executed.

(e) A description of the nature and duration of the time share being sold.

(f) A description of the purchaser's rights under s. 707.47 [the cancellation rights].

75.     The Wisconsin Timeshare Act's reference in Wis. Stat. § 707.47(1) and (2) of the cancellation rights refer to the timeshare disclosure statement required under Wis. Stat. § 707.41(2), Wis. Stats.

15

76.     Bluegreen has misstated the buyer's right to cancel in every timeshare contract sold in Wisconsin at all relevant times, which is a material misrepresentation under Wis. Stat. § 707.55(1).

77.     Bluegreen's stated cancellation policy in its contracts sold in Wisconsin **only** permit a buyer to cancel by sending written notice to "Bluegreen Vacations Unlimited, Inc., ATTN: Corporate Sales Accounting Dept., 4960 Conference Way N Ste 100, Boca Raton FL 33431-3311." (All caps omitted.)   That is contrary to Wisconsin Timeshare Act cancellation rights which expressly permit buyers to cancel in two other ways:

a.  by personally delivering notice of the cancellation to the seller; and

b.  by mailing the notice to the developer's agent for service of process.

78.     Bluegreen's stated cancellation policy in all contracts sold in Wisconsin also provides for a reduction in the refund if the buyer does not return all of the point of purchase materials.

79.     Nothing in the Wisconsin Timeshare Act's cancellation provisions permit Bluegreen to deduct from the buyer's refund for not returning the contract documents and other point of purchase materials.

80.     Bluegreen's misrepresentations of a timeshare buyer's cancellation rights is a violation of Wis. Stats. §§ 707.47 and 707.55(1).

81.     Bluegreen's contracts are expensive and difficult to understand. Many consumers, including Plaintiffs, desire to cancel them once they understand what they

have gotten into. The purpose and effect of the misrepresentation of cancellation rights is to make cancellation difficult and burdensome.

### C.  Illegal Attorney's Fee Provision in Timeshare Contracts

82.     Upon information and belief, all contracts during the relevant period that Bluegreen has prepared for purchasers in Wisconsin to sign, regardless of where the timeshare is located, provide for the buyer to pay the attorney's fees and all costs of collection of the seller or creditor in the case of default or breaking any promise related to the contract.

83.     Wisconsin Chapter 428 pertaining to first lien real estate and other mortgage loans under $25,000.00 applies to loans taken out in Wisconsin to finance the purchases of timeshares wherever located.

84.     Wis. Stat. § 428.103(3)(e) provides:

**428.103 Limitations**

(e) The creditor shall not contract for or charge its attorney fees to the customer except as follows:

> 1. Reasonable fees for opinions of title.

> 2.  In foreclosure cases, 5 percent of the amount adjudged due the creditor; or if the dispute is settled prior to judgment, a reasonable fee based on the time, nature and extent of the work involved, but not to exceed 2-1/2 percent of the unpaid principal balance of the loan.

85.     Bluegreen's practice of contracting for and arranging for buyers to sign timeshare contracts illegally providing that in the event of a broken promise or default by consumers, the consumers would be responsible to pay the creditor's or seller's attorney's

17

fees was a material misrepresentation of the buyers' rights and obligations under Wis. Stat. § 707.55(1) as well as a violation of Wis. Stat. § 428.103.

86.     The purpose and effect of the illegal attorney's fee provision is to materially increase the liability consumers perceive that they face if they attempt to cancel or decide not to proceed with their timeshare purchases, thus deterring cancellation of undesirable contracts.

### D.  Bluegreen Offering Incentives "Today Only"

87.     As part of its usual and customary practice and Bluegreen's high pressure sales techniques, Bluegreen offers incentives such as special prices, discounts, special memberships and prizes to prospective purchasers which Bluegreen tells the prospective buyers are good only for that day. The incentives are offered in writings which state that they are only good for that day.

88.     Wis. Stat. § 707.55(2) provides:

**707.55  Prohibited advertising and sales practices.** In connection with the offer or sale of a time share, no person may engage in any of the following practices:

(2) Incentives. Making any assertion, representation or statement that any incentives, including discounts, special prices, merchandise awards, types of memberships or other financial benefits, are only available to a prospective purchaser for the remainder of the day on which the assertion, representation or statement is made, except that the person may state that the incentives are not guaranteed in the future and that they may be subject to negotiation in the future.

89.     Bluegreen's representing incentives to purchase as being available "today only" is a deceptive and misleading sales practice prohibited by Wis. Stat. § 707.55(2).

18

90.     As part of its regular business practices, Bluegreen violates the "today only" prohibition of Wis. Stat. § 707.55(2).

91.     This creates an atmosphere of urgency that induces customers to enter into improvident and expensive timeshare contracts.

### E. Illegal Referral Selling

92.     As a matter of its usual business practices, Bluegreen used a referral selling program to induce the sales of timeshare interests.

93.     As part of the program, Bluegreen solicited names from prospective buyers or other people who might be interested in touring Bluegreen.

94.     Bluegreen promised to pay money to prospective buyers for each qualified person who toured Bluegreen that the prospective buyer referred.

95.     Bluegreen did not first give buyers the full amount of potential compensation offered to those buyers under Bluegreen's referral selling plan, which is a violation of Wisconsin law.

### V. Factual Allegations of Class Representatives

### A. Melissa Landon and Edward Landon

96.     Plaintiffs incorporate by reference the preceding paragraphs.

97.     On or about January 18, 2015, Melissa and Edward Landon, a married couple, went to Christmas Mountain Village Resort after receiving a telephone call a few weeks earlier from Bluegreen soliciting them to come to Christmas Mountain Village Resort.

19

98.     The Landons were told that they would receive a $100 gift card if they spent 60 minutes listening to a presentation.

99.     A Front-Line sales representative made a high-pressure sales pitch to the Landons to buy timeshare points.

100.    The Landons did not receive their $100 gift card until after the sales presentation was completed.

101.    In the sales presentation, Bluegreen told the Landons that certain incentives to purchase, such as the Charter VIP 20,000 Points program giving them unlimited bonus times at Bluegreen Resorts and discounted prices on rooms and the waiver of their Travelers Plus program were available that day only.

102.    Bluegreen's representing incentives to purchase as being available "today only" is a deceptive and misleading sales practice prohibited by Wis. Stat. § 707.55(2).

103.    In the sales presentation and during the sales negotiations, Bluegreen told the Landons that they could save money on maintenance fees if they gave Bluegreen the names of friends or relatives who might be interested in coming to tour Bluegreen.

104.    The sales representative told the Landons that they would get $50 off maintenance fees for every person who toured Bluegreen that the Landons referred.

105.    Bluegreen discussed the referral program before the Landons purchased the timeshare interest, and the sales representative explained that people have gone for years not paying any maintenance fees just through their referrals to Bluegreen.

106.    The Landons gave Bluegreen the names of people to tour Bluegreen as

20

potential referrals.

107.   Bluegreen did not give the Landons compensation for the names they gave in the referral program, either at the time they gave Bluegreen the referrals or at any time.

108.   As a matter of its usual business practices, Bluegreen used a referral program to induce the sales of timeshare interests.

109.   As a matter of its usual business practices, Bluegreen never gave any compensation to its buyers at the time they made referrals.

110.   After the Landons agreed in the sales presentation to buy 6,000 bi-annual "points" for $8,300 and paid $1,180 down, they were given a "Purchase Proposal" which stated that "The seller is Bluegreen Vacations Unlimited, Inc."

111.   According to the purchase contract documents eventually presented to the Landons for signature, the property was not owned by Bluegreen Vacations Unlimited, Inc.; the seller and creditor was Cibola Vista Resort & Spa in Peoria, AZ.

112.   When the Landons noticed that their timeshare location was in Arizona, they were puzzled and questioned this, because they did not want to own a timeshare in Arizona.

113.   The Landons thought they were buying a timeshare interest in Christmas Mountain Village, where they had toured and seen the property and which was located much closer to them than Arizona.

114.   In response to their inquiry, the Bluegreen representative told them that the Arizona timeshare was simply a matter of assignment, and that it did not matter where the

21

timeshare was located, because the Landons would have all of the same rights and benefits as they would have with a Wisconsin timeshare at Christmas Mountain Village.

115.    The statement that owning a timeshare in Arizona was the same as owning a timeshare in Wisconsin and that it didn't matter where the timeshare was located was a material misrepresentation, in violation of Wis. Stat. § 707.55(1).

116.    The location of a timeshare matters greatly when the purchase is made in Wisconsin, because Wis. Stat. § 707.59 significantly limits the rights and consumer protections under the Wisconsin Timeshare Act of timeshare owners who buy a timeshare located outside of Wisconsin.

117.    Wis. Stat. § 707.59 provides:

**707.59  Time-share units not within state.**
(1)  Except as provided in sub. (2), if time shares in a time-share unit located outside of this state are offered or sold in this state, the laws of the state where the time-share unit is located which relate to a general matter covered by this chapter apply to the offer or sale of those time shares in this state. If the state in which the time-share unit is located has no laws relating to a general matter covered by this chapter, the provision in this chapter relating to that matter applies to the offer or sale of those time shares in this state.

(2) Section 707.55 applies to any offer or sale of a time share in a time-share unit, whether the time-share unit is located in this state or outside this state.

118.    Bluegreen's practice of simply "assigning" real estate to buyers after they have made a down payment and when they believe they are buying a timeshare interest located in Wisconsin is part of its usual and customary and standardized business practices.

119.     Bluegreen's practice of telling consumers that it does not matter where their timeshare is located is part of its usual and customary and standardized business practices.

120.     The timeshare sold to the Landons was not owned by Bluegreen; it was owned by a Third-Party Developer.

121.     The Landons returned to Christmas Mountain Village on or about May 30, 2015 after receiving a letter asking them to return so that Bluegreen could further explain their benefits.

122.     On their second visit, an In-house sales representative made a sales presentation to the Landons to persuade them to buy more points, ostensibly so that they could better use their timeshare interest.

123.     The sales representative offered a "highly reduced cost" for 6,000 additional points, telling the Landons that they needed to buy more points in order to properly use their first timeshare.

124.     Once again, the Landons negotiated "timeshare points" and did not know until they made a down payment who the seller would be or where the timeshare would be located.

125.     Once again, the Landons were presented with a "Purchase Proposal" stating "The seller is Bluegreen Vacations Unlimited, Inc."

126.     The Landons eventually learned (when asked to sign contract paperwork) that the timeshare they bought in May 2015 would be located in Virginia, and it was called Landmark Resort Properties of VA, LLC.

127.    The Landons never requested or desired to own a timeshare located in Virginia and never mentioned Virginia as a place they wanted to own real property.

128.    Once again, Bluegreen assured the Landons that it did not matter where their timeshare was located and that they had all the privileges and rights to the Virginia timeshare as they would have in Wisconsin.

129.    In both of their 2015 timeshare purchases, the Landons were presented with numerous documents to sign relating to the timeshare contracts.

130.    In both of their 2015 timeshare purchases, Bluegreen, as is its customary and usual and standardized practice, presented the Landons with contracts which provided that they had to pay the seller's or creditor's reasonable attorney's fees in the event of a broken promise or default.

131.    In both of their 2015 timeshare purchases, Bluegreen misstated the Landons' right to cancel their timeshare contracts under Wisconsin law, as Bluegreen did in all timeshare contracts sold in Wisconsin.

## B.  Shane Auxier and Mu Hpare

132.    Plaintiffs incorporate by reference the preceding paragraphs.

133.    On or about September 28, 2014, Shane Auxier and Mu Hpare, a married couple, went to Christmas Mountain Village Resort after being solicited in person while checking in to the Poseidon Resort a few miles away from Bluegreen's Christmas Mountain Village Resort in Wisconsin Dells.

24

134. The woman who solicited them told Mr. Auxier and Ms. Hpare ("the Auxiers") that they would receive a free $100 VISA gift card if they spent 60 minutes listening to a presentation at Christmas Mountain Village.

135. The "free $100 gift card" Bluegreen used to induce the Auxiers to listen to the sales presentation was not given to them until they were leaving Christmas Mountain Village after buying a timeshare.

136. The Auxiers initially spent approximately two hours listening to a sales presentation at Christmas Mountain Village given to a group of people, including them.

137. After the group presentation was completed, a Front-Line sales representative made a high-pressure sales pitch to the Auxiers to buy timeshare points, offering them inducements to buy, such as "free" and reduced-price vacations in all Bluegreen locations, a cruise, free RCI membership and other incentives.

138. The Bluegreen sales representative increased their offer to provide additional incentives that Bluegreen offered to induce the sale of 20,000 points.

139. In the sales presentation, Bluegreen told the Auxiers that certain incentives to purchase, such as the Charter VIP 20,000 Points program giving them unlimited bonus times at Bluegreen Resorts and discounted prices on rooms and the waiver of their Travelers Plus program were available that day only.

140. In the sales presentation and during the sales negotiations, Bluegreen told the Auxiers that they could save money on maintenance fees if they gave Bluegreen the names of friends or relatives who might be interested in coming to tour Bluegreen.

25

141. The sales representative told the Auxiers that they would get $50 off maintenance fees for every person who toured Bluegreen that the Auxiers referred.

142. The referral program was explained before the Auxiers purchased the timeshare interest.

143. Although the Auxiers were hesitant about whether they could afford the timeshare, the prospect of paying their maintenance fees through referring names to Bluegreen helped justify the cost to them.

144. Mu Hpare gave Bluegreen the names of people to tour Bluegreen as potential referrals.

145. Bluegreen did not give the Auxiers compensation for the names they gave in the referral program, either at the time they gave Bluegreen the referrals or at any time.

146. After the Auxiers agreed in the sales presentation to buy 20,000 annual "points" for $27,000.00 and made a down payment of $3,050.00, they were given a "Purchase Proposal" which stated that "The seller is Bluegreen Vacations Unlimited, Inc."

147. According to the purchase contract documents eventually presented to the Auxiers for signature, the property was not owned by Bluegreen Vacations Unlimited, Inc.; the seller and creditor was InnSeason Resorts South Mountain Condominium in Lincoln, NH.

148. When the Auxiers noticed that their timeshare location was in New Hampshire, they questioned this, because they did not want to own a timeshare in New

Hampshire.

149.     The Auxiers thought they were buying a timeshare interest in Christmas Mountain Village in Wisconsin Dells, where they had toured and seen the property and which was located much closer to them than New Hampshire.

150.     In response to their inquiry, the Bluegreen representative told them that it did not matter where the timeshare was located, because the timeshare need not be used at a specific location. Bluegreen said that they simply needed to put in a physical address for the paperwork only. The Auxiers understood they would have all of the same rights and benefits as they would have with a Wisconsin timeshare at Christmas Mountain Village.

151.     The statement that owning a timeshare in New Hampshire was the same as owning a timeshare in Wisconsin and that it didn't matter where the timeshare was located was a material misrepresentation, in violation of Wis. Stat. § 707.55(1).

## VI.  FIRST CLAIM FOR RELIEF
## VIOLATION OF THE WISCONSIN TIMESHARE ACT
## WIS. STAT. § 707.55

152.     Plaintiffs incorporate by reference the preceding paragraphs.

153.     Bluegreen committed numerous violations of the Wisconsin Timeshare Act, Wis. Stats. Chapter 707, including without limitation: Wis. Stats. §§ 707.41, 707.46, 707.47 and 707.55.

154.     Wis. Stats. §§ 707.41, 707.46, 707.47 apply to all contracts signed with Bluegreen in Wisconsin, because these contracts all specify that the Wisconsin Timeshare law applies to cancellation rights.

27

155.  The Wisconsin Timeshare Act cancellation statute, § 707.47, incorporates § 707.41 (requirements of a Timeshare Disclosure Statement) and § 707.46 (Minimum contract requirements) into the cancellation law.

156.  Bluegreen failed to provide a Timeshare Disclosure Statement at all to any person that signed a contract with Bluegreen in Wisconsin for timeshares located outside of Wisconsin.

157.  Bluegreen failed to provide a Timeshare Disclosure Statement which complied with Wis. Stat. §§ 707.41 and 707.47 to any person who purchased in Wisconsin timeshares located in Wisconsin.

158.  Under the express terms of Wis. Stat. § 707.59(2), Wis. Stat. § 707.55 (Prohibited Advertising and Sales Practices) applies to any offer or sale of a timeshare in a time-share unit, whether the time-share unit is located in this state or outside this state.

159.  Bluegreen misrepresented and failed to accurately disclose the Class Members' cancellation rights.

160.  Each of the Class Members were adversely affected by Bluegreen's failure to comply with the applicable provisions of the Wisconsin Timeshare Act, Chapter 707.

161.  Each of the Class Members are entitled to the remedies of Wis. Stat. § 707.57(1), which provides:

**Private remedies.**

(a) If a developer or any other person subject to this chapter fails to comply with this chapter or the time-share instrument, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief, including but

28

not limited to damages, injunctive or declaratory relief, specific performance and rescission.

(b) A person or class of persons entitled to relief under par. (a) is also entitled to recover costs, disbursements and reasonable attorney fees, notwithstanding s. 814.04 (1).

## CLASS ALLEGATIONS

162.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

163.    The class consists of (a) any person (b) who purchased in Wisconsin (c) from either defendant (d) one or more timeshares (whether for property in Wisconsin or elsewhere) (e) on or after a date six years prior to the filing of this action.

164.    The class includes at least hundreds of persons and is so numerous that joinder of all members is not practicable.

165.    There are questions of law and fact common to class members, which common questions predominate over any questions relating to individual class members.

166.    The predominant common questions include:

      a.    Whether Bluegreen provided compliant (or any) Timeshare Disclosure Statements to the class members;

      b.    Whether Bluegreen's contracts with the class members correctly stated their right to cancel under Wisconsin law;

      c.    Whether Bluegreen's contracts with the class members improperly provided for reductions in the required refund;

29

d.    Whether Bluegreen told class members that the incentives offered incentives good for only the day of the presentation.

167.    These questions predominate over any questions peculiar to individual class members.

168.    Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

169.    Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer litigation.

170.    A class action is superior for the fair and efficient adjudication of this matter, in that:

a.    Members of the class are likely to be unaware of their rights;

b.    There is no reason to have multiple lawsuits raising the same issues;

c.    Prior individual lawsuits have not been effective in halting the practices complained of.

## VII.  SECOND CLAIM FOR RELIEF
### ILLEGAL REFERRAL SELLING
### WISCONSIN ADMIN. CODE CHAPTER ATCP 121
### AND WIS. STAT. § 100.20(5)

171.    Plaintiffs incorporate by reference the preceding paragraphs.

172.    Bluegreen is a "seller" as defined in Wis. Admin. Code Chapter ATCP § 121.01(4).

30

173. The vacation timeshare sales Bluegreen made to Class Members were primarily for personal, family, or household purposes and are therefore "consumer sales" as defined in Wis. Admin. Code Chapter ATCP § 121.01(2).

174. Bluegreen, as an inducement to sell the Class Members timeshares, offered compensation to each of the Class Members, as prospective buyers, either for (a) names of other prospective buyers or lessees, or (b) otherwise aiding Bluegreen in selling timeshares to others. Thus Bluegreen used a "referral selling plan" as that term is defined in Wis. Admin. Code Chapter ATCP § 121.01(3).

175. Bluegreen's practice of offering such compensation was universal.

176. Bluegreen did not first give the Class Members the full amount of potential compensation offered to those buyers under Bluegreen's referral selling plan, thus violating Wis. Admin. Code Chapter ATCP § 121.02.

177. This was Bluegreen's standard practice.

178. Wis. Admin. Code Chapter ATCP § 121.02 provides: "No seller or lessor may use any referral selling plan to make a consumer sale unless the seller or lessor first gives the buyer or lessee the full amount of potential compensation offered to that buyer or lessee under that plan."

179. The Class Members suffered pecuniary losses because of Bluegreen's violations of Wis. Admin. Code Chapter ATCP 121, and are entitled to recover double their pecuniary loss, together with costs and reasonable attorney fees from Bluegreen, pursuant to Wis. Stat. § 100.20(5).

31

## CLASS ALLEGATIONS

180.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

181.     The class consists of (a) any person (b) who purchased in Wisconsin (c) from either defendant (d) one or more timeshares (whether for property in Wisconsin or elsewhere) (e) on or after a date six years prior to the filing of this action.

182.     The class includes at least hundreds of persons and is so numerous that joinder of all members is not practicable.

183.     There are questions of law and fact common to class members, which common questions predominate over any questions relating to individual class members.

184.     The predominant common questions include:

   a.     Whether Bluegreen, as an inducement to sell the Class Members timeshares, offered compensation to each of the Class Members, as prospective buyers, either for (a) names of other prospective buyers or lessees, or (b)  otherwise aiding Bluegreen in selling timeshares to others.

   b.     Whether Bluegreen failed to first give the Class Members the full amount of potential compensation offered to those buyers under Bluegreen's referral selling plan, thus violating Wis. Admin. Code Chapter ATCP § 121.02.

   c.     The appropriate remedy.

32

185.     These questions predominate over any questions peculiar to individual class members.

186.     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

187.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer litigation.

188.     A class action is superior for the fair and efficient adjudication of this matter, in that:

     a.    Members of the class are likely to be unaware of their rights;

     b.    There is no reason to have multiple lawsuits raising the same issues;

     c.    Prior individual lawsuits have not been effective in halting the practices complained of.

### VIII.  THIRD CLAIM FOR RELIEF
### ILLEGAL ATTORNEY'S FEES PROVISIONS
### WIS. STAT. § 428.103(1)(e)

189.     Plaintiffs incorporate by reference the preceding paragraphs.

190.     Defendants violated Wis. Stat. § 428.103(1)(e) by contracting for attorney's fees in excess of the amounts permitted.

191.     This provision was common to all contracts defendants entered into with persons in the state of Wisconsin.

33

## CLASS ALLEGATIONS

192.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

193.    The class consists of (a) any person (b) who purchased in Wisconsin (c) from either defendant (d) one or more timeshares (whether for property in Wisconsin or elsewhere) (e) on or after a date six years prior to the filing of this action (f) where the credit extended was $25,000 or less.

194.    The class includes at least hundreds of persons and is so numerous that joinder of all members is not practicable.

195.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.

196.    The predominant common questions include:

      a.    Whether Bluegreen contracted for improper attorney's fees; and

      b.    The appropriate remedy.

197.    These questions predominate over any questions peculiar to individual class members.

198.    Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

199.    Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer litigation.

200.    A class action is superior for the fair and efficient adjudication of this matter, in that:

a.    Members of the class are likely to be unaware of their rights;

b.    There is no reason to have multiple lawsuits raising the same issues;

c.    Prior individual lawsuits have not been effective in halting the practices complained of.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class Members respectfully request that judgment be entered as follows:

I.    Certifying the Classes as requested herein;

ii.    Providing that each plaintiff and class member may elect to rescind their timeshare contract and obtain restitution of amounts paid, under Wis. Stat. § 707.57(1);

iii.    Double the pecuniary loss of those Class Members whom Bluegreen engaged in illegal referral selling, under Wisconsin Admin. Code Chapter ATCP § 121 and Wis. Stat. § 100.20(5);

iv.    Double the finance charge up to $1,000.00 for all persons who signed contracts providing for illegal attorney's fees, under § 428.103(2);

v.    A declaration that Bluegreen violated Wis. Stat. § 709.55, Wis. Admin. Code ATCP Chapter 121, and § 428.103(1)(e);

vi.    Injunctive relief enjoining Bluegreen from engaging in future violations of Wis. Stat. § 707.55, Wis. Admin. Code ATCP Chapter 121, and § 428.103(1)(e);

vii.    All reasonable and necessary attorneys' fees and costs provided by Wis. Stats. §§ 707.57, 100.20(5), 428.106(1), 425.308, and the Court's inherent power; and

35

viii.    for such other and further relief as the Court deems just and proper.

## X.  JURY DEMAND

Plaintiffs hereby demand that this case be tried by a jury.

Dated this 28th day of June, 2018.

/s/__DeVonna Joy_____
DeVonna Joy
Attorney for Plaintiffs

Consumer Justice Law Center, LLC
P.O. Box 51
Big Bend, WI 53103-0051
Tele:  262- 662-3982
E-mail: djlaw@wi.rr.com; jgiove@wi.rr.com;
consumerjusticelaw@wi.rr.com

Daniel A. Edelman
Cathleen M. Combs
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
Tele: 312-739-4200
Fax: 312-419-0379 (FAX)
E-mail address for service: courtecl@edcombs.com